IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK C. RUSSO, et al. | : | MDL 875 |
| | : | |
| v. | : | |
| | : | |
| AEROJET ROCKETDYNE, INC., et al. | : | CIVIL ACTION NO. 18-3024 |

**MEMORANDUM OPINION**

THOMAS J. RUETER                                                   August 5, 2020
United States Magistrate Judge

Presently before the court is Plaintiffs' Motion to Compel Defendant Curtiss-

Wright Corporation's Tendering of a Corporate Representative for a Deposition Pursuant to Fed.

R. Civ. P. 30(b)(6) and for Sanctions for Spoliation of Evidence and Various Other Discovery

Violations (Doc. 303) (the "Motion"), defendant Curtiss-Wright Corporation's opposition thereto

(Doc. 310), and plaintiffs' reply memorandum (Doc. 313).  For the reasons set forth below, the

Motion will be granted in part and denied in part.  An appropriate Order will follow.

## I.       BACKGROUND

In the instant Motion, plaintiffs allege that defendant Curtiss-Wright breached its

duty to secure all potentially relevant materials related to the subject matter of a particular

litigation by engaging in deliberate, bad-faith conduct that resulted in the actual and constructive

destruction of evidence.  (Pls.' Mot. at 2.)  According to plaintiffs, defendant Curtiss-Wright

failed to preserve relevant evidence years after it reasonably anticipated asbestos litigation by

donating documentation to the National Air and Space Museum of the Smithsonian Institution

and Wright State University,[1] and by disposing of documents as described in deposition

---

[1]       In 1969, Curtiss-Wright donated 146 cubic feet of engine-related materials to the
National Air and Space Museum of the Smithsonian Institution.  (Resp. at 8.)  In 2002, it made

testimony of Brian T. Barrett, a Curtiss-Wright employee, in a prior asbestos case.  <u>See</u> <u>id.</u> at 3.[2]

Plaintiffs further aver that defendant failed to proffer a sufficiently prepared Rule 30(b)(6)

witness in this case.  <u>Id.</u>

---

another donation of twenty-five rolls of microfilm.  <u>Id.</u>  That same year, defendant donated
26,000 original drawings, 1,300 rolls of microfilm, and twenty bound publications to Wright
State University.  <u>Id.</u>

[2]      The Barrett deposition is of import to the present dispute.  In 1997, Mr. Barrett was
deposed in connection with an unrelated asbestos case, <u>Rogers v. O.V. Smith & Sons of Big
Chimney, Inc.</u>, Civil Action No. 97-C1695 (Kanawha Cty. Ct., W.Va. 1997), brought against
Curtiss-Wright in West Virginia.  <u>See</u> Pls.' Mot., Exh. 2 (hereinafter "Barrett Dep.").  At the
time of the deposition, Mr. Barrett was employed as a program manager by Curtiss-Wright and
was called to testify on behalf of the corporation.  (Barrett Dep. at 4-5.)  Mr. Barrett explained
that he was tasked with responding to inquiries pertaining to the corporation's "old engine
program."  <u>Id.</u> at 8.  To do so, Mr. Barrett "would research their questions if [he] could find the
documents."  <u>Id.</u>  During his deposition, Mr. Barrett referenced manuals and engineering
drawings recorded on microfilm that pertained to the aircraft engines and parts at issue in that
case.  <u>See</u> <u>id.</u> at 8-22.  When asked to specify the location at which Curtiss-Wright stored the
manuals utilized in that deposition, Mr. Barrett explained:

> [T]o put this in perspective, Curtiss-Wright produced many hundreds of variations of
> engines between their inception in 1908 and when they got out of the business in the
> 1970s, so there were literally thousands of different versions of these documents.  The
> remaining documents that are left that haven't been destroyed take up about two bankers
> boxes, and those are ones that I salvaged from – literally salvaged from the dumpster.
>
> They were being disposed of as part of an action a few years ago, and I knew that I would
> occasionally get questions from people, so I grabbed what I could from the dumpster and
> put it in storage within our facility.
>
> But these documents represent probably 25 percent of the total of what I did salvage.  All
> the rest of the documents were destroyed a number of years ago.  And I'm not
> exaggerating when I say I pulled them from the dumpster.  I actually did climb into a
> dumpster to get these out of a box that was being thrown away.  But that was again about
> three years ago that I did that.

<u>Id.</u> at 22-23.
        Additionally, Mr. Barrett testified that in preparation for the deposition, he researched
gaskets "that had specific Curtiss-Wright part numbers" and compared the items to "that list of
part numbers that contained asbestos."  <u>Id.</u> at 33-34.  Mr. Barrett clarified that in connection with
an earlier request by "some government agency," Curtiss-Wright was asked "to review all of our
facilities for asbestos content."  <u>Id.</u> at 34.  In connection with that review, "it was determined that
gaskets had been found in that inventory of leftover parts that contained asbestos."  <u>Id.</u>  When
asked whether "the documentation for which those parts that contained asbestos" was still in

Plaintiffs request the court to impose various sanctions, including sanctions pursuant to Federal Rule of Civil Procedure 37 for defendant's alleged intentional disposal, donation, and destruction of relevant documents.  See Pls.' Mot. at 28-29.  Plaintiffs also request sanctions of costs and attorney fees related to filing the instant motion and to re-deposing the Rule 30(b)(6) witness.  Id.

### A.     Plaintiffs' Position

Plaintiffs presently contend that Curtiss-Wright was put on notice of potential asbestos liability from its use of asbestos-containing components in its aircraft and aircraft engine products no later than 1971, and that despite being on notice, defendant destroyed and donated relevant product manuals, engineering specifications, and other documents in the 1990s and 2000s.  (Pls.' Mot. at 3.)  Plaintiffs argue that defendant "now seeks to use its improper destruction and donation of documents as justification for its lack of knowledge of its products.  Curtiss-Wright claims that it is under no obligation to review or retrieve any of the documents it donated to the National Air and Space Museum of the Smithsonian Institution or Wright State University in order to respond to any asbestos plaintiffs' discovery requests, including the preparation of its 30(b)(6) witness."  (Pls.' Mot. at 3-4.)

### B.     Defendant's Position

Curtiss-Wright counters that plaintiffs have not established that spoliation occurred and plaintiffs' requests for sanctions should be denied.  (Resp. at 2.)  Defendant further

---

existence, Mr. Barrett explained that "there was an internal company report that had two or three pages of parts.  They had gone through all of these parts and found several pages of parts that contained asbestos, and some of them related to the 1820 series engine."  Id. at 34-35.  Mr. Barrett further stated that he had a copy of such document in his office.  Id. at 35.  The court will refer to the documents salvaged from the dumpster by Mr. Barrett and the internal company report that listed asbestos containing parts as the "Barrett Documents."

avers that it should not be required to produce its corporate representative for a second deposition because the information sought by plaintiffs is not reasonably available to Curtiss-Wright and plaintiffs already possess the discoverable information relevant to their claims.  Id. Specifically, Curtiss-Wright maintains that it does not employ any individual with direct knowledge of the topics set forth in the Notices of Deposition, that many of the former employees with such knowledge are deceased, that Curtiss-Wright has no ability to identify or contact any such living former employees, and that all documents that may contain relevant information were either disposed of in the ordinary course of business many years ago, or donated.  See Resp. at 4, 6 and Resp. Exhs. B, C, D, E, F, H.  Instead, Curtiss-Wright has indicated that the information plaintiffs seek is available from defendant's expert witness, Commander Stephen J. Riordan, IV.  (Resp. at 4.)

II.     DISCUSSION

   A.     Spoliation of Evidence

        Plaintiffs have raised several concerns regarding spoliation of evidence.  That is, plaintiffs contend that defendant breached its duty to preserve documents in anticipation of asbestos litigation and after such litigation had commenced.  See Pls.' Mot. at 15-24.  See also Pls.' Reply at 3-7.  Specifically, plaintiffs argue that Curtiss-Wright had a "pre-litigation duty to preserve evidence relevant to future asbestos litigation as a consequence of the Court's inherent powers to ensure the conduct of fair and orderly trials."  (Pls.' Mot. at 17.)  Plaintiffs further aver that Curtiss-Wright's actions require scrutiny under the standards of Federal Rules of Civil Procedure 30 and 34.  Id.  According to plaintiffs, Curtiss-Wright breached its duties by directing the disposal of manuals and other documents concerning the aircraft and aircraft engine products,

or legacy products,[3] in the 1990s; by donating documents in the 2000s; and by failing to review, search, or produce the donated materials for documents concerning asbestos-containing components in its legacy products.  Id. at 18.

In general, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Costobile-Fulginiti v. City of Philadelphia, 719 F. Supp. 2d 521, 529 (E.D. Pa. 2010) (citing Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005)).  "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).[4]  "[A] party's failure to produce a document can have the same practical effect as destroying it and . . . , under certain circumstances, nonproduction of evidence is rightfully characterized as spoliation." Id.  See also Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) ("When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him.") (citing Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983); United States v. Cherkasky Meat Co., 259 F.2d 89 (3d Cir. 1958)).  The Third Circuit also has held that "a finding of bad faith is

---

[3]     The parties utilize the term "legacy products" to describe to the Curtiss-Wright aircraft and aircraft engine products that are at issue in this case.  The court will also employ this terminology.

[4]     The party who seeks a spoliation sanction bears the burden of proving these factors. Marinkovic v. Battaglia, 2019 WL 4600207, at *13 (W.D. Pa. Sept. 23, 2019) (citation omitted).

pivotal to a spoliation determination." <u>Bull</u>, 665 F.3d at 79.  <u>See also</u> <u>Brewer</u>, 72 F.3d at 334

("Such a presumption or inference arises, however, only when the spoliation or destruction [of

evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not

arise where the destruction was a matter of routine with no fraudulent intent.") (citing 29 Am.

Jur. 2d Evidence § 177)).  If found, spoliation is punishable by sanctions, including the spoliation

adverse inference.  <u>Bull</u>, 665 F.3d at 72-73.  Under the facts of this case, plaintiffs' claims of

spoliation of evidence fail for several reasons.

        With respect to the documents that were disposed of in 1994 as described by Mr.

Barrett in his deposition, plaintiffs contend that Curtiss-Wright breached a duty to preserve such

documents because a reasonable party in the same factual circumstances would have reasonably

foreseen litigation at that time.  <u>See</u> <u>Bistrian v. Levi</u>, 2020 WL 1443735, at *5 (E.D. Pa. Mar. 24,

2020) (discussing remedy for spoliation of evidence pursuant to Fed. R. Civ. P. 37 and common

law duty to preserve in anticipation of litigation).  According to plaintiffs, Curtiss-Wright was

put on notice of potential asbestos liability no later than 1971 when OSHA passed regulations

concerning workers' exposure to asbestos, or in the 1980s when several of its contemporaries in

the military aircraft and aircraft engine manufacturing industry were facing asbestos lawsuits.

(Pls.' Mot. at 3.)  The court notes, however, that Mr. Barrett testified that he retrieved the

documents from the dumpster in 1994, which was ten to twenty years after Curtiss-Wright was

allegedly put on notice of potential liability.  However, Curtiss-Wright was not named as a

defendant in an asbestos suit until 1997 – some three years after the document disposal and

arguably fifteen to twenty-five years after it was allegedly put on notice.  <u>See</u> Resp. at 10.  Thus,

at the time of the document disposal in 1994, it was not reasonably foreseeable to a reasonable

person, or reasonably foreseeable to defendant, that it had a duty to preserve the documentation

because it could be relevant to future litigation.  Rather, it appears from Mr. Barrett's testimony that the documents were disposed of in the ordinary course of business and plaintiffs have adduced no evidence establishing otherwise.

      Furthermore, as noted <u>supra</u>, to find spoliation, the court must make a finding of bad faith.  "Spoliation requires intent that the 'evidence was destroyed in order to prevent it from being used by the adverse party. . . .  To be clear, therefore, the mere destruction or loss of evidence in and of itself does not make out a claim for actionable spoliation; more must be shown.'"  <u>Susinno v. Work Out World, Inc.</u>, 333 F.R.D. 354, 360-61 (D.N.J. 2019) (quoting <u>Kuhar v. Petzl Co.</u>, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018) (collecting cases)).  It bears noting that Mr. Barrett, a Curtiss-Wright employee, saved some documents from destruction and preserved them thereafter.  This fact weighs against plaintiffs required showing of bad faith on behalf of Curtiss-Wright.  As such, the court finds that the 1994 disposal of documents referenced in the Barrett deposition does not amount to spoliation of evidence.

      The court similarly finds that the donation of materials to the National Air and Space Museum of the Smithsonian Institution and Wright State University does not constitute spoliation of evidence.  Plaintiffs have failed to establish any evidence of bad faith with respect to the donation of these documents.  Curtiss-Wright indicates that it exited the airplane manufacturing business in November 1950 and shut down its Aeronautical Division and Propeller Division in the late 1960s.[5]  (Resp. at 12.)  Defendant avers that it made the donations to preserve historical information and the deeds of gift that memorialize the donations reflect this intention.  <u>See</u> Pls.' Mot., Exh. 3.  Indeed, the documents are preserved and are publicly

---

[5]    The parties dispute when Curtiss-Wright ceased business with respect to the legacy aircraft products.  In any event, the exact timing of this fact has no bearing on the court's decision herein.

available.  Plaintiffs simply have failed to establish that the donations of documents to the

Smithsonian Institution and Wright State University were done in bad faith.  The donations did

not amount to spoliation of evidence.[6]

Under the present circumstances, plaintiffs have failed to prove that defendant

spoliated evidence; thus, no sanctions for spoliation of evidence are warranted.[7]  The decision to

impose sanctions for discovery violations and any determination as to what sanctions are

appropriate are matters generally entrusted to the discretion of the district court.  Bowers v. Nat'l

Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007), amended on reh'g (Mar. 8, 2007),

(citing National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (per curiam)).  See

also Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010) ("We review a

district court's discovery orders for abuse of discretion, and will not disturb such an order absent

a showing of actual and substantial prejudice.").

Furthermore, the court is not persuaded that Federal Rule of Civil Procedure 34

requires defendant to produce documents from the donated materials.  See Pls.' Mot. at 18-20.

Plaintiffs argue that defendant should be required to do so because under Rule 34(a)(1) parties

---

[6]     The court finds no merit to plaintiffs' argument that the donations amount to a
constructive destruction of the documents because they are not organized.  See Pls.' Mot. at 18.

[7]     To determine whether spoliation sanctions are appropriate, a court will consider: (1) the
degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice
suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid
substantial unfairness to the opposing party and, where the offending party is seriously at fault,
will serve to deter such conduct by others in the future.  Schmid v. Milwaukee Elec. Tool Corp.,
13 F.3d 76, 79 (3d Cir. 1994).
        In any event, to the extent plaintiffs request a spoliation instruction, the court would
decline to do so at this stage of the litigation.  See, e.g., Swindell Dressler Int'l Co. v. Travelers
Cas. & Sur. Co., 827 F. Supp. 2d 498, 507 (W.D. Pa. 2011) ("Evidentiary rulings, including
rulings regarding whether a spoliation inference is appropriate, rest in the sound discretion of the
court.  To this end, the United States Court of Appeals for the Third Circuit has cautioned us that
pretrial rulings regarding evidentiary questions should rarely be granted.") (internal citations and
quotations omitted)).

are permitted to request that other parties produce relevant documents that are in the responding party's "possession, custody, or control."  <u>Id.</u> at 18 (citing Fed. R. Civ. P. 34(a)(1)).  The requesting party bears the burden of establishing control.  <u>Love v. New Jersey Dept of Corr.</u>, 2017 WL 3477864, at *5 (D.N.J. Aug. 11, 2017) (citing <u>United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO</u>, 870 F.2d 1450, 1452 (9th Cir. 1989)), <u>opinion clarified sub nom.</u> <u>Love v. New Jersey Dep't of Corr.</u>, 2017 WL 4842379 (D.N.J. Oct. 26, 2017).  Although federal courts construe "control" broadly for Rule 34 purposes, <u>see</u> <u>Castellani v. City of Atl. City</u>, 2016 WL 7155826, at *3 (D.N.J. Sept. 15, 2016) (internal quotations and citations omitted), under the facts of the present case, the documents that memorialize the 2002 donations to the Smithsonian Institution and Wright State University make clear that the materials donated pursuant to these agreements do not remain in the possession, custody, or control of Curtiss-Wright.[8]

The 2002 donations are each evidenced by a Deed of Gift and Indemnification Agreement.  <u>See</u> Pls.' Mot., Exh. 3.  The agreements indicate that Curtiss-Wright "does hereby donate, contribute, give, transfer and convey its entire right, title, and interest in and to" the donated materials provided, <u>inter alia</u>, that the materials were made "available solely for non-commercial uses such as historical research, exhibition, model making or for non-profit restoration purposes; provided that such models or restored aircraft shall be and remain inoperable and incapable of flight."  <u>Id.</u>  The agreements also require that any person or entity that has access to the donated materials execute an indemnification agreement, indemnifying Curtiss-Wright if the donated materials are used in any way not consistent with the intent of the

---

[8]    The parties' submissions do not contain any documentation memorializing the 1969 donation to the Smithsonian Institution.

deed of gift.  Id.  Curtiss-Wright explained in its Response that the indemnification requirement seeks to protect Curtiss-Wright from potential liability if the donated materials are used to rebuild a Curtiss-Wright aircraft or engine, someone is injured, and then sues Curtiss-Wright. See Resp. at 12 n.4.  This explanation is consistent with the terms of the deeds of gift and demonstrates that Curtiss-Wright did not retain "control" as alleged by plaintiffs.  See Bumgarner v. Hart, 2007 WL 38700, at *5 (D.N.J. Jan. 4, 2007) (holding that the court cannot order production of documents that are not in the responding party's possession or control).  The cases cited by plaintiffs in support of this argument are inapposite to the case at bar.

Furthermore, plaintiffs have the ability to review the donated materials; plaintiffs have not been denied access to them.  While the court understands plaintiffs' claim that the task of reviewing the donated documents is perhaps costly and burdensome, "it is well-settled that litigants generally bear their own litigation expenses."  Singleton v. Beadle, 2019 WL 168342, at *2 (M.D. Pa. Jan. 10, 2019) (citing Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987)).[9]  For these reasons, the court declines to order Curtiss-Wright to produce documents from the donated materials.

**B.    Rule 30(b)(6) Witness**

Federal Rule of Civil Procedure 30(b)(6) permits a party to name a corporation or other organization as a deponent.  The party seeking an organization's testimony "must describe with reasonable particularity the matters for examination," and the organization is required to designate one or more persons to "testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  Plaintiffs contend that Carolyn Straton, who was

---

[9]    The court also sees no basis for plaintiffs' request that Curtiss-Wright be required to bear the cost of providing plaintiffs with a "roadmap" of the donated materials.  See Pls.' Mot. at 20 n.8.

produced for deposition on February 13, 2020 by Curtiss-Wright as the 30(b)(6) representative,

was not adequately prepared to address the topics enumerated in plaintiffs' First Amended

Notice of Deposition.[10]

    "[T]he testimony of the Rule 30(b)(6) designee is deemed to be the testimony of

the corporation itself."  State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203,

212 (E.D. Pa. 2008).  "[A]n individual employee's lack of personal knowledge is irrelevant: the

---

[10]  Ms. Straton, who has been a Curtiss-Wright employee since July 2016, holds the title of Corporate Director of Environment Health and Safety.  (Straton Dep. at 27-28.)  At the deposition, Ms. Straton indicated that she had reviewed plaintiffs' First Amended Notice of Deposition and that she is the person most knowledgeable with respect to the topics listed therein.  Id. at 11.  To prepare for the deposition, Ms. Straton searched Curtiss-Wright's website for historical information regarding its legacy products, reviewed the company's financial materials including its 10-K filing, and conducted a search of departmental files, including accounting, finance, legal, and HR.  Id. at 12.  In addition, Ms. Straton conducted a search of the "corporate files" housed in Curtiss-Wright's Parsippany, New Jersey location, as well as inquired of an employee at another Curtiss-Wright location.  Id.  She also searched payroll records "to look for potential employees who were retained at or around 1967, which is sort of the date of the manufacturing for the legacy products."  Id.  Ms. Straton also indicated that she reviewed the deposition of Frank Russo, the depositions of two former Curtiss-Wright employees, Dave Rogers and Ken Lewis, as well as an affidavit of Mr. Lewis.  Id. at 16, 32-33.  Ms. Straton did not review the deposition of Mr. Barrett prior to providing her testimony and was unfamiliar with the documents referenced therein.  Id. at 17, 239-48.  With respect to the legacy aviation products specifically, Ms. Straton explained, "I was unsuccessful at finding a lot of documentation regarding these products.  They're just – based on the materials that I looked at and what I reviewed, I really couldn't find anything."  Id. at 21.  For example, with respect to aircraft engines, Ms. Straton acknowledged that she did not attempt to locate any documentation that is publicly available and did not request that anyone provide her with such information, but further noted that "[t]here are no documents within Curtiss-Wright that are available at the company or based on what I reviewed regarding those engines, so there wasn't anyone to ask to share that information with me."  Id. at 22-23.  Ms. Straton confirmed that she did not review the documents that were donated to the Smithsonian Institution or Wright State University, nor did she request that anyone provide her with the donated documents "to help make . . . [her] the person most knowledgeable."  Id. at 217, 249-50.  Ms. Straton stated, "I could've, but my understanding is that even if I were able to go through those documents, there isn't anybody, again, in Curtiss-Wright that could authenticate or validate or have any technical knowledge about them, so I – you know, I didn't think it would benefit."  Id. at 217-18.  Ms. Straton did not review Commander Riordan's report.  Id. at 250.

organization must provide a witness to 'testify as to matters known or reasonably available to the organization.'" Ierardi v. Lorillard, Inc., 1991 WL 158911, at *1 (E.D. Pa. Aug. 13, 1991) (quoting Fed. R. Civ. P. 30(b)(6).  Courts will look to whether the information is available from "documents, past employees, or other sources." TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 454 (M.D. Pa. 2013) (internal citation omitted), amended (Apr. 8, 2013).  Courts have noted that "[w]here a corporate defendant cannot produce a knowledgeable current employee, it is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Clientron Corp. v. Devon IT, Inc., 310 F.R.D. 262, 266-67 (E.D. Pa. 2015) (internal quotations, alterations and citations omitted); Ierardi, 1991 WL 158911, at *1.  If "documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." TIG Ins. Co., 919 F. Supp. 2d at 454 (internal quotations and citations omitted). Ultimately, "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000) (citations and internal quotations omitted).[11]

---

[11]    It should be noted that in Black Horse Lane, the court found the Rule 30(b)(6) deponent in that case demonstrated an "uncooperative attitude" and a "flagrant disregard for his obligations as a Rule 30(b)(6) witness" such that his testimony amounted to a failure to appear, as he claimed to have no knowledge about the conduct of his own company or the agreements that he negotiated and signed, further claiming that he was unaware that he was the designated 30(b)(6) representative, that he did not know what the phrase "Rule 30(b)(6) representative" meant, and was not familiar with Rule 30(b)(6) or what it required him to do, despite the fact that he "obtained undergraduate and law degrees from prestigious universities and has been licensed to practice law" for over thirty years.  Black Horse Lane Assoc., L.P., 228 F.3d at 304-05.

Thus, it is well-established that "the corporation must prepare its designee to be able to give binding answers on its behalf . . . [and] perform a reasonable inquiry for information that is noticed and reasonably available to it." State Farm Mut. Auto. Ins. Co., 250 F.R.D. at 216 (internal quotations and citations omitted).  However, "if a Rule 30(b)(6) witness is asked a question concerning a subject that was not noticed for deposition or that seeks information not reasonably available to the corporation, the witness need not answer the question."  Id.  As such, the rule does not contemplate that a Rule 30(b)(6) witness be required to provide information that is not reasonably available to it.

Courts have noted that the party responding to a Rule 30(b)(6) notice of deposition "should be obligated to produce the information under its control.  Application of this principle to Rule 30(b)(6) discovery is not only consistent with the judicial interpretations of the other discovery provisions of the Federal Rules of Civil Procedure, it is also consistent with the purpose of discovery – '[to] make a trial less of a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'"  Crawford v. George & Lynch, Inc., 19 F. Supp. 3d 546, 553-54 (D. Del. 2013) (quoting Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., , 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 8, 2002) and United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 2 L.Ed.2d 1077 (1958)).  Curtiss-Wright contends that the information plaintiffs seek in the First Amended Notice of Deposition is not reasonably available to it because it is not in Curtiss-Wright's possession or control.  Rather, the donated information is discoverable by other means, as it is publicly available.  The court agrees.

Defendant avers that it has complied with the requirements of Rule 30(b)(6) because Ms. Straton adequately testified about information known or reasonably available to

Curtiss-Wright.  Courts have noted that "[i]f the entity receiving the deposition notice does not possess knowledge of the matters listed in the deposition notice, 'then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization.'"  Bigsby v. Barclays Capital Real Estate, Inc., 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (citing Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995) and Fed. R. Civ. P. 30(b)(6)).  See Oy v. Verizon Servs. Corp., 2013 WL 5675516, at *2 (D. Del. Oct. 15, 2013) ("[W]here information is not reasonably available to the corporation, a Rule 30(b)(6) witness need not answer the question."); Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Tr., 2011 WL 1636985, at *1 (D. Del. Apr. 29, 2011) (same).  See also Costa v. Cnty. of Burlington, 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness.").

The determination whether information is "known or reasonably available to a corporation requires a fact-specific analysis."  Sanofi-Aventis v. Sandoz, Inc., 272 F.R.D. 391, 393-94 (D.N.J. 2011) (citing Coryn Grp. II, LLC v. O.C. Seacrets, Inc., 265 F.R.D. 235, 239 (D. Md. 2010)).  Indeed, this case presents unique circumstances in that the information plaintiffs seek is not in defendant's possession or control, yet is available to plaintiffs and appears to be in their possession.[12]  The Third Circuit has noted that the purpose of Rule 30(b)(6) is to "curb the 'bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge' of relevant facts."  Black Horse Lane Assoc., L.P., 228 F.3d at 304

---

[12]     Although they maintain that defendant has the responsibility to provide plaintiffs with the relevant donated documents, plaintiffs acknowledge that they conducted a week-long search of the Smithsonian's archives for donated Curtiss-Wright documents relevant to this case.  (Pls.' Mot. at 5 n.2.)

(quoting Fed. R. Civ. P. 30(b)(6) Advisory Committee's Notes). <u>See also</u> <u>Private Sols. Inc. v.</u> <u>SCMC, LLC</u>, 2016 WL 8732078, at *4 (D.N.J. May 20, 2016) ("[T]he 30(b)(6) deposition is intended to 'more efficiently produce the most appropriate party for questioning, curbs the elusive behavior of corporate agents [. . . that] suggest someone else has the requested knowledge, and reduces the number of depositions for which an organization's counsel must prepare agents and employees.'") (quoting <u>Harris v. New Jersey</u>, 259 F.R.D. 89, 92 (D.N.J. 2007)).

        The purpose of the rule would not be served by requiring additional Rule 30(b)(6) deposition testimony under the circumstances of this case. The information sought by plaintiffs is not in Curtiss-Wright's possession or control. This is not a situation where defendant has failed to provide the witness who possesses the information sought, or who has simply failed to review relevant information that is reasonably available to her. Furthermore, the court notes that the materials plaintiffs seek pertain to Curtiss-Wright's legacy airplane and engine products that were last manufactured in the 1960s or 1970s and were donated due to their historical value in 1969 and 2002. <u>See</u> Pls.' Mot., Exh. 3 (deeds of gift). Curtiss-Wright has represented that it does not employ any individual with direct knowledge of the topics set forth in the Notices of Deposition, that many of the former employees with such knowledge are deceased, that Curtiss-Wright has no ability to identify or contact any such living former employees, and that all documents that may contain relevant information were either disposed of in the ordinary course of business many years ago, or donated. <u>See</u> Resp. at 4, 6 and Resp. Exhs. B, C, D, E, F, H. The

corporation's present lack of knowledge with respect to the aviation products can be attributed, in large part, to the passage of time.[13]

Additionally, the substantive information plaintiffs seek, while not in defendant's possession or control, is publicly available.  The burden of obtaining the donated information is equally as onerous to Curtiss-Wright as it would be to plaintiffs.  Moreover, Curtiss-Wright has indicated that the information plaintiffs seek is available from defendant's expert witness, Commander Riordan.  See Resp. at 4.  Requiring Curtiss-Wright to identify, retrieve, and review documents from the Smithsonian Institution and Wright State University in order to educate a corporate designee as to the contents therein[14] would delay this case and impose undue expense upon defendant.  Curtiss-Wright would be required to do exactly what plaintiffs would be required to do to obtain the information.  Accordingly, the court denies plaintiffs' request for an

---

[13]      When deciding a motion requesting additional Rule 30(b)(6) testimony, courts have considered the impact of the passage of time and its effects on the ability of a party to produce the requested information.  See Barron v. Caterpillar, Inc., 168 F.R.D. 175, 177 (E.D. Pa. 1996) (noting that the designated corporate representative was queried regarding events and projects approximately thirty years in the past and stating that "both parties should expect that the inescapable and unstoppable forces of time have erased items from his memory which neither party can retrieve").  See also Janki Bai Sahu v. Union Carbide Corp., 528 F. App'x 96, 104 (2d Cir. 2013) (not precedential) (affirming district court finding that denied request for certain Rule 30(b)(6) depositions as unduly burdensome wherein the depositions would have required the defendant to "prepare witnesses to respond to questions regarding events that took place between fifteen and thirty-five years ago.  Not only would this be difficult and costly, but the benefit to the Plaintiffs would likely be extremely low: no witness can be expected to provide accurate and detailed accounts of events so far in the past.").

[14]      At her deposition, Ms. Straton repeatedly testified that she was not familiar with the substantive documents presented to her by plaintiffs' counsel and that she did not have the technical knowledge or experience in order to answer such questions.  See Straton Dep. at 49-54, 85-212.  Instead, Ms. Straton indicated that she could only review the documents and relay the content of the documents.  See id.

additional Rule 30(b)(6) deposition.[15]  For the foregoing reasons, the court is similarly

unpersuaded by plaintiffs' argument that Curtiss-Wright should be required to provide plaintiffs

with a "roadmap" of the donated information.

## III.    CONCLUSION

"The decision to impose sanctions for discovery violations and any determination

as to what sanctions are appropriate are matters generally entrusted to the discretion of the

district court."  Bowers, 475 F.3d at 538; SuperMedia LLC v. Morley, 2014 WL 5023386, at *12

(E.D. Pa. Oct. 8, 2014) (same).  As set forth supra, the court has determined that spoliation did

not occur as alleged by plaintiffs and sanctions are not warranted.  Moreover, the court will not

impose sanctions with respect to the Rule 30(b)(6) witness.

However, it appears from the parties' submissions to the court that during

discovery Curtiss-Wright has not specifically, directly addressed the current status of the Barrett

Documents, specifically the documentation that was salvaged from the dumpster and the list of

Curtiss-Wright products that allegedly contained asbestos.  Therefore, the court will direct

---

[15]    As defendant pointed out, Curtiss-Wright was presented with a similar argument in a case brought against it in 2015 in the United States District Court for the District of Connecticut.  See Brown v. CBS Corp., et al., Civil Action No. 12-1495 (D. Conn. 2015) (Dkt. No. 332 at 18-19). In that case, the plaintiff filed a motion to compel after deposing Curtiss-Wright's Rule 30(b)(6) corporate designee, arguing that the witness failed to provide adequate substantive testimony on Curtiss-Wright's legacy engines.  See id. at 4-19.  After hearing argument from the parties regarding the alleged document destruction and the donation to the Smithsonian Institution and Wright State University, the court denied the motion.  The court found that the donated information was not known or reasonably available to Curtiss-Wright, and reasoned that "[a]t this point, Curtiss-Wright would be required to do exactly what the plaintiff would be required to do to get this information."  Id. at 18-19.  The court also found significant the length of time since the corporation engaged in this business, stating, "[t]he fact of the matter is, we're talking about something going back decades. . . .  [W]here you have something that goes back quite a while in terms of time, you have to anticipate that there may be an unavailability of certain information and people, because people's memories fade, people leave the company, they die." Id. at 19.

Curtiss-Wright to search for the Barrett Documents.  If the Barrett Documents are located, defendant shall produce a copy to plaintiffs.  If the Barrett Documents are not located, defendant will provide to plaintiffs a sworn written response explaining in detail the steps taken to search for the documents and the results of the search.

It also appears that plaintiffs have sought authentication of certain documents from defendant and defendant has responded generally that it is unable to provide such authentication.  See, e.g., Pls.' Mot., Exh. 17 at 1; Straton Dep. at 217-18 (indicating that no one at Curtiss-Wright can authenticate documents).  To the extent that questions remain concerning the authenticity of relevant documents that plaintiffs retrieved from the National Air and Space Museum of the Smithsonian Institution and/or Wright State University, plaintiffs may avail themselves of Federal Rule of Civil Procedure 36(a)(1)(B) which allows plaintiffs to serve requests for admissions on defendant for purposes of determining the genuineness of a document.  See Fed. R. Civ. P. 36(a)(1)(B) ("A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . the genuineness of any described documents.").

Both plaintiffs and defendant have raised issues concerning the dilatoriness of the opposing party.  That is, plaintiffs claim that defendant raised improper claims of attorney-client and work product privileges to prevent or delay production of documents.  Plaintiffs argue that only a few days prior to the Straton deposition, defendant produced relevant documents that should have been produced in 2019 in response to written discovery requests.  See Pls.' Mot. at 8, 23-25, 29; Pls.' Reply at 8.  On the other hand, Curtiss-Wright contends that plaintiffs' Motion to Compel is untimely as it was filed nine months after the close of discovery and three months after the Straton deposition.  See Resp. at 17.  The court finds that sanctions, monetary or

otherwise, are not warranted at this time for such acts.  However, the court cautions the parties

that the court will not tolerate any further delays in this case.

       An appropriate Order consistent with this Memorandum Opinion will follow.


       BY THE COURT:


       __/s/ Thomas J. Rueter_____
       THOMAS J. RUETER
       United States Magistrate Judge